No. 19,367.

JAMES WARD, *Appellee*, v. THE GEORGE K. MACKIE FUEL COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

COAL MINE—*Explosion of Gas—Personal Injuries—Plaintiff's Evidence Should Have Gone to the Jury.* In an action to recover for injuries caused by a gas explosion in a coal mine, under sections 4986, 5005 and 5006 of General Statutes of 1909, relating to the inspection, ventilation and safety of mines, the testimony on behalf of the plaintiff tended to show the presence of standing gas and lack of inspection and ventilation, although portions of such evidence indicated only the presence of temporary gas encountered in cutting through horsebacks. A demurrer to the plaintiff's evidence was sustained, but after further consideration this order was set aside and a new trial was granted. Such later order is held proper.

Appeal from Cherokee district court; EDWARD E. SAPP, judge.  Opinion filed March 6, 1915.  Affirmed.

*C. A. McNeill,* of Columbus, for the appellant.

*L. W. Johnson,* of Pittsburg, *A. H. Skidmore,* and *S. L. Walker,* both of Columbus, for the appellee.

The opinion of the court was delivered by

WEST, J.:    The plaintiff sued to recover damages for injuries sustained while employed in the defendant's coal mine, because of alleged negligence of the defendant in failing to keep its mine free of standing gas, and failing to have plaintiff's working place carefully examined by a competent fire boss, and failure to supply a sufficient amount of air to dilute the accumulating gas. (Gen. Stat. 1909, §§ 4986, 5005, 5006.) A demurrer was sustained to the plaintiff's evidence, and afterwards a new trial was granted and the defendant appeals.

Plaintiff testified that while working in the room gas which had accumulated therein ignited and burned his face and burned and blistered his arm; that he held his breath as long as he could and then fell over; that in about a week or two his face peeled off, and did not bother him.  His eyes were weak and felt as if there was something in front of them; that he was at the house about nine or ten days; that his arm was blistered, the worst burn being on the muscle. He continued to have it dressed for eighteen or twenty days, the flesh was removed every time the clothing was changed; went back to work in a few weeks but his arm and hand would cramp, and after two or three weeks he quit, his arm being too painful.  It was six weeks after the injury that he earned money as a coal miner; before the injury he was physically strong; another miner some six months before this injury had been burned eight or ten hundred feet from where

the plaintiff was injured; the plaintiff had seen persons burned in the mine before the person just mentioned, but not as badly burned; that where gas is not generated in mines and does not accumulate so as to become standing gas it is not a rule to put on a gas man. The plaintiff was not expecting to encounter gas as there was nothing to indicate that it was there. "The explosion went to the top and bottom and to the face and back." Plaintiff had seen gas in this mine before in similar quantities, sometimes in drill holes and sometimes in the top. Another witness testified that on one occasion previous to the injury there was an explosion, either of powder or gas, ignited by his lamp. "I think it came from the gas that was in the hole where the fuse was put in, there was standing gas in the place." Another witness testified that he was burned in the same mine at another time after the plaintiff was injured. On cross-examination he testified that the occasion when he was burned was before the plaintiff was burned, that he told a man in the office on top about the burn. Another testified that before the plaintiff's injury, he observed a lighting of gas in the same mine, something like fifteen hundred feet from where plaintiff was injured; that there is no well defined meaning of the term "standing gas" and there is no way of telling the amount of gas without an instrument to test it, which testing could be done successfully by a fire boss. The defendant admitted that it had no fire boss in the mine in question "because none was needed."

The defendant contends that the statute merely requires that an examination be made when the operator knows that the mine is generating fire damp or has been generating it in such quantities as to make a reasonable person know that it was doing so; that where persons have operated a mine for several years without knowledge or notice of the generation of fire damp they are not held responsible for a sudden and

unexpected slight explosion, and that the testimony showed the existence of no standing gas.

In *Cheek v. Railway Co.*, 89 Kan. 247, 131 Pac. 617, it was held that sections 4986 and 5006 require that coal mines generating fire damp shall be carefully examined every morning with a safety lamp by a competent fire boss before the miners enter their respective working places and apply to all mines generating such gas in appreciable quantities, "the purpose being to detect the gas as soon as it appears so that danger from it may be averted." (Syl. ¶ 2.)    It was also stated that the full purpose of the requirement of examination for gas every morning was to protect mine workers from explosions of quantities of gas which a competent examination by a competent person would reveal.    (Syl. ¶ 3.)

Section 4986, enacted in 1883 (Laws 1883, ch. 117, § 5), requires all mines generating fire damp to be kept free of standing gas, and that their every working place shall be carefully examined every morning with a safety lamp by a competent person before any workman is allowed to enter therein.    Section 5006, enacted in 1897 (Laws 1897, ch. 159, § 4), makes a similar requirement, and provides that the hydrogen or fire damp generated in working places must be diluted and rendered harmless before persons are permitted to enter such place with a naked light.    It is argued that the slight and infrequent discoveries of gas in the defendant's mine were too trifling to bring it within the statute.    But since two persons within about one year's time were burned in the same mine, from eight to fifteen hundred feet separating the places of the two injuries, it is impossible to say that the amount of gas was not appreciable.    Manifestly, the object of the statute was to protect miners from injuries as well as from fatalities, and it is a well-recognized fact that while mines containing horsebacks often manifest the

presence of gas in a comparatively slight degree, nevertheless in other instances in such amounts that its ignition would mean serious injury. But without attempting to define accurately the term "standing gas" or to construe more particularly the statutory provisions involved, it is sufficient to say that the record contains testimony touching the amount of gas in the mine and the injury of the plaintiff which was proper to go to the jury, and the granting of a new trial was not error.

The order is therefore affirmed.